The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VULCAN INC.,

Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY, *et al.,*

Defendants

NO. 2:21-cv-0336-BJR

**ORDER DENYING MOTION TO STRIKE INSURERS' ANSWERS AND COUNTERCLAIMS AND REQUEST FOR DISMISSAL AND ORDER TO CONTINUE ACTION IN STATE COURT**

I. INTRODUCTION

This matter comes before the Court on the "Motion to Strike Insurers' Answers and Counterclaims and Request for Dismissal and Order to Continue Action in State Court," filed by Plaintiff Vulcan, Inc. ("Vulcan"). Vulcan argues that the four Answers and Counterclaims filed, respectively, by Defendants (1) Everest Indemnity Insurance Company, Arch Specialty Insurance Company, Great Lakes Insurance SE, Lloyd's of London Syndicate 1686 (AXS Lead), Lloyd's of London Syndicate 1414 (ASC Lead), International Insurance Company of Hannover SE, Lloyd's of London Syndicate 2003 (XLC Lead), Dkt. No. 42; (2) Zurich American Insurance Company, Dkt. No. 43; (3) Evanston Insurance Company, Dkt. No. 44; and (4) Lloyd's of London Syndicate 0382 (HDU Lead), Continental Casualty Company, Endurance American Specialty Insurance

ORDER DENYING MOTION TO STRIKE

- 1

Company, Dkt. No. 45, (collectively, along with Defendants that have not yet filed responsive pleadings, "Insurers" or "Defendants") should be stricken because they were filed in violation of a stay; are redundant of the claims and affirmative defenses already asserted; and are intended merely to prevent Vulcan from voluntarily dismissing its complaint under Federal Rule 41(a) and refiling it in state court. Vulcan also seeks dismissal under Federal Rule 12(b)(1), claiming that this Court lacks diversity subject matter jurisdiction. Having reviewed the parties' briefs in support of and opposition to the Motion, including a sur-reply requested by the Court, and the remainder of the record, the Court finds and rules as follows.

## II.   BACKGROUND

Vulcan filed this lawsuit in this Court on March 11, 2021, to preserve its right to pursue claims against its tower of property insurers, for coverage of losses associated with the COVID-19 pandemic. Compl., Dkt. No. 1, at ¶¶ 1.1, 4.1. Vulcan named over a dozen Insurer Defendants to which it had tendered claims, including, relevant to this Motion, five Lloyd's of London "lead syndicates": Syndicate 0382 (HDU LEAD); Syndicate 1414 (ASC LEAD); Syndicate 1686 (AXS LEAD); Syndicate 1886 (QBE LEAD); and Syndicate 2003 (XLC LEAD) (collectively the "Lloyd's Defendants"). A Lloyd's syndicate is composed of one or more corporate or individual underwriters, known as "Names." Generally speaking, Names are severally (but not jointly) liable on a Lloyd's insurance policy to which they subscribe; the Names are bound by a "contractual provision that obligates a Name to abide by a judgment rendered against any other Name." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 937 (2d Cir. 1998); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1084 (11th Cir. 2010) ("Through contractual agreement, the other Names that are members of the underwriting syndicates on the

ORDER DENYING MOTION TO STRIKE

- 2

policy remain liable for their proportional share of any adverse judgments.").

At the time the Complaint in this case was filed, most of the Defendants had not yet completed investigation of Vulcan's claims or denied coverage. Accordingly, the parties agreed to a stay early in the proceedings, before Defendants had filed a responsive pleading, to allow Defendants time to complete their investigation and determine whether coverage existed. *See* Stip. Mot. to Stay Proceedings, Dkt. No. 30. The Court granted the parties' request for a stay, and directed them to submit a joint status report ("JSR") on or before August 26, 2021, the date the stay was scheduled to expire. *See* Ord. Granting the Stip. Mot. to Stay Proceedings ("First Stay Order"). The First Stay Order further provided that "Vulcan shall file an Amended Complaint within ten (10) business days of the stay being lifted, obviating the need for the Defendant Insurers to respond to the current iteration of the Complaint." *Id*.

Within two days before expiration of the first stay, all Insurers (with a couple of exceptions not material to this Motion) denied Vulcan's claims.

On August 26, 2021, the parties filed the JSR as directed. In it, they requested a 60-day extension of the stay, this time to allow Vulcan an opportunity to complete its jurisdictional discovery. The JSR stated, "Vulcan filed this lawsuit in federal court on the basis of diversity jurisdiction but has just recently raised, and is currently investigating, questions regarding the amount in controversy and diversity of citizenship. While the Insurers cooperate with Vulcan during its investigation, this Court retains, and no defendant insurer waives, this Court's diversity jurisdiction." JSR at 2, Dkt. No. 36. The JSR additionally provided: "[a]fter the expiration of this 60-day extended stay, the parties will jointly provide the Court with sufficient information to allow the Court to determine whether diversity subject matter jurisdiction exists, and if the parties

ORDER DENYING MOTION TO STRIKE

- 3

dispute whether diversity exists." *Id*. The Court granted this second stay request, again directing the parties to submit a JSR on or before the expiration date, October 26, 2021. Dkt. No. 37.

On October 26, 2021, the parties filed the second JSR. In that JSR Vulcan took the position that the Court does not have subject matter jurisdiction over this matter, because the Lloyd's Defendants do not meet the requirements for diversity. The JSR further stated "[t]he defendant insurers will inform Vulcan and the Court whether they (i) dispute the lack of diversity jurisdiction, [and] (ii) consent to Vulcan continuing this action in King County Superior Court." The final paragraph is captioned "Request for Additional Extension of Stay," but did not explicitly ask for a stay. Instead, it stated only that "[t]he parties propose that the defendant Insurers provide this information to Vulcan and the Court on or before November 5, 2021. The parties further propose that Vulcan then be given until November 19 to respond as appropriate." The Court did not grant any request for an additional stay extension.

Later that day and on October 29, 2021, several of the Defendants filed Answers and Counterclaims against Vulcan, which are the subject of this Motion.

### III.   DISCUSSION

**A.  Motion to Strike Counterclaims**

Vulcan first seeks an order striking Insurers' Answers and in particular, the Counterclaims, pursuant to both the Court's inherent power to control its docket, and Federal Rule 12(f), which provides "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As Vulcan points out, these pleadings prevent Vulcan from unilaterally dismissing its lawsuit without a court order (and refiling in state court). *See* Fed. R. Civ. P. 41(a)(2) ("If a defendant has pleaded a counterclaim before being

ORDER DENYING MOTION TO STRIKE

- 4

served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication."). Nevertheless, motions to strike under Federal Rule 12(f) are disfavored, "and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties." *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d 1380).[1]

Vulcan argues three independent grounds for striking Defendants' pleadings. First, Vulcan argues the counterclaims are redundant to Defendants' affirmative defenses, and mere "mirror images" of the claims that Vulcan says it intends to include in its proposed amended complaint, which it has not yet filed. Second, Vulcan argues Defendants' responsive pleadings were filed on the day the parties' stay expired, and therefore are in violation of the stay. Vulcan also says the pleadings have frustrated its express intent to file an amended complaint after the stay was lifted, and were therefore filed "with a lack of candor to the Court and Vulcan." Mot. at 4. Third, Vulcan claims that the pleadings constitute bad-faith gamesmanship, which the Court should not condone, in that "[i]nsurers' answers and counterclaims are a transparent effort to prevent Vulcan from voluntarily dismissing its complaint and continuing the action in state court." *Id*. at 5.

The Court finds none of these arguments persuasive. As to Vulcan's first argument, the counterclaims do not appear to be redundant to any *existing* claims. Vulcan argues only that they are redundant to claims it intends to include in an amended complaint, which it has not yet filed.

---

[1] Federal Rule 12(f) requires a motion to strike to be filed "within 21 days after being served with the pleading," and Vulcan's Motion is therefore untimely. Fed. R. Civ. P. 12(f)(2). However, that rule also authorizes courts to consider striking matters from a pleading *sua sponte*, and thus "the court may consider and grant an untimely motion to strike where it seems proper to do so." *Sliger,* 789 F. Supp. 2d at 1216.

ORDER DENYING MOTION TO STRIKE

- 5

Even if the counterclaims were substantially a mirror image of Vulcan's claims, or repetitious of Defendants' affirmative defenses, striking Defendants' counterclaims would not help streamline this dispute or "make trial less complicated." *Sliger*, 789 F. Supp. At 1216. Quite to the contrary, Vulcan's motion asks the Court to conduct a line-by-line comparison between Defendants' twelve counterclaims, and their more than 30 affirmative defenses: and that is only to assess redundancy in the first of the four answers filed in this case. Undertaking this task to eliminate any purported redundancy would create inefficiencies, not avoid them. Moreover, Vulcan has not claimed that this is an instance in which the counterclaims raise an immaterial, vexatious, or scandalous hurdle for the Court to overcome before attending to the true claims in the case. If the counterclaims are indeed overlapping, they may be resolved simultaneously with the claims and affirmative defenses in this case.

Regarding Vulcan's second argument, it is not clear that the pleadings actually "violated" any stay; they were filed on the day the stay expired, not in the heart of the stay period, or "in the dark of night," as Vulcan dramatically claims.[2] Mot. at 5-6. It is also worth noting that one of the Answers, filed by Defendants Endurance American Specialty Insurance Company, Continental Casualty Company, and Lloyd's Underwriter Syndicate 0382, Dkt. No. 45, was filed on October 29, 2021, well after the stay had expired. Thus even if the Court were to strike the other three answers for failure to observe the stay, this pleading appears to be an impediment to Vulcan voluntarily dismissing its Complaint under Federal Rule 41(a). Moreover, Vulcan has not claimed any prejudice resulting from Defendants having filed their answers on October 26 rather than a day later. The Court did not in fact extend the stay that expired on October 26, and Vulcan has not

---

[2] The October 26 Answers were filed at approximately 7:30 p.m., an earlier time of day than Vulcan itself filed its Complaint.

ORDER DENYING MOTION TO STRIKE

- 6

claimed that it intended to file a voluntary dismissal on October 27, but was foiled by Defendants' pleadings.

Third and finally, the Court does not agree with Vulcan's characterization of Defendants' actions in filing the counterclaims as impermissible "gamesmanship." Defendants transparently admitted that they were filing the pleadings in part to preserve any right they had to proceed in federal court—in other words, to play by the rules of the forum that Vulcan itself chose. *See, e.g.*, Certain Defs.' Ans., Aff. Defenses, and Counterclaim, Dkt. No. 42 at 1 ("Insurers file this Answer, Affirmative Defenses and Counterclaim for Declaratory Relief out of an abundance of caution to preserve their right to this court's diversity jurisdiction."). Language in the Court's prior orders and the parties' agreements may have led Vulcan to reasonably believe Defendants would wait until Vulcan filed an Amended Complaint before filing their answers; but nothing in those documents required it, particularly after expiration of the First Stay Order.

Vulcan's motion seeks an extraordinary sanction for what appear to be Defendants' shrewd but fair litigation tactics. Nothing in the Court's orders or the rules of civil procedure precluded Defendants from filing their responsive pleadings, though doing so may have been in derogation of the collaborative spirit Vulcan claims the parties were proceeding under. At the same time, it is apparent that the only real reason Vulcan seeks an order striking the counterclaims is so it would be free to voluntarily dismiss the claims it filed in this Court, without the Court's permission. These are not legitimate grounds for striking material in a pleading. Defendants having abided by the letter of the parties' stipulations and this Court's orders, the Court declines to mete out the sanction that Vulcan seeks.

ORDER DENYING MOTION TO STRIKE

- 7

## B. Motion to Dismiss for Lack of Subject Matter Jurisdiction (Diversity)

### 1. Standard for Motion to Dismiss for Lack of Jurisdiction

In the alternative to striking Defendants' pleadings and allowing Vulcan to voluntarily dismiss its Complaint, Vulcan argues the Court should dismiss the Complaint, under Federal Rule 12(b)(1), for lack of subject matter jurisdiction. District courts have diversity jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. The party seeking to establish diversity jurisdiction has the burden of proof with respect to each of these elements. *See Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994); *NewGen LLC v. Safe Cig, LLC*, 840 F.3d 606, 613–14 (9th Cir. 2016).

### 2. Whether the Lloyd's Defendants Meet the Requirements of Diversity Jurisdiction

Vulcan claims that the Lloyd's Defendants fail to meet the $75,000 amount-in-controversy requirement of Section 1332. According to Vulcan, jurisdiction depends upon the citizenship and amount in controversy of all the Names that subscribe to the five policies at issue—Names that in this case, number in the thousands and would not meet the $75,000 threshold. Vulcan cites the prevailing authority, both from district courts in the Ninth Circuit, and from the Second and Seventh Circuit Courts of Appeals, for the proposition that courts require "all Names to individually meet the amount in controversy under 28 U.S.C. § 1332." Mot. at 8 (quoting *Nat'l Fire & Marine Ins. Co. v. Certain Underwriters at Lloyd's London*, 2009 WL 10676368, at *2 (W.D. Wash. June 26, 2009)).

The critical flaw in Vulcan's position is that in every one of the cases on which Vulcan relies, "Certain Underwriters at Lloyd's [of] London" (or some close variation) is the named

ORDER DENYING MOTION TO STRIKE

- 8

Lloyd's party. *See* Mot. at 7-8 (citing *Nat'l Fire & Marine Ins. Co.*, 2009 WL 10676368, at *2; *Certain Underwriters at Lloyd's of London Syndicates v. Travelers Indem. Co.,* 2006 WL 1896341, at *2 (W.D. Wash. July 7, 2006); *Zidell Marine Corp. v. Beneficial Fire & Cas. Ins. Co.*, 2003 WL 27176596, at *4 (W.D. Wash. Dec. 4, 2003; *Certain Underwriters at Lloyd's London v. Raytheon Co.*, 2001 WL 1836268 (N.D. Cal. Dec. 4, 2001)). Those words, unless otherwise qualified, are commonly understood to refer to all Names subscribing to a given policy in dispute. In material contrast, Vulcan chose to sue the individual lead syndicates on each of the five Lloyd's policies at issue in this dispute: Syndicate 0382, Syndicate 1414, Syndicate 1686, Syndicate 1886, and Syndicate 2003.

In doing so, Vulcan chose, presumably deliberately, not to adopt the common practice of suing all the Names subscribing to the policies at issue under the rubric "Certain Underwriters at Lloyd's." This choice cannot be considered incidental. Undoubtedly, Vulcan's experienced counsel carefully (and correctly) reasoned that in this case, naming the select individual syndicates was necessary to avoid running afoul of Section 1332 and to ensure this Court's jurisdiction.

At the same time, Vulcan is correct that consistent with the line of cases cited above, the citizenship of the Names constituting *the five named syndicates* is indeed relevant to a determination of the citizenship of the syndicates to which they belong. However, Vulcan has cited no authority for the proposition that the citizenship of Names belonging to *other syndicates*, not named in this lawsuit, must also be considered. To the contrary, it appears largely settled in the circuits to have considered the question that while the Names that are represented in a lawsuit against a Lloyd's syndicate must be considered in assessing diversity jurisdiction, those Names

ORDER DENYING MOTION TO STRIKE

- 9

that are not represented by the syndicate named in the lawsuit, though they may also subscribe to (and therefore be liable on) the policies at issue, need not be. As the Second Circuit held after extensive consideration,

> We hold that when a Lloyd's lead underwriter is sued in a representative capacity . . . each and every Name whom the lead underwriter represents must be completely diverse. But we also hold that when a Lloyd's Name (including a lead underwriter) is properly sued only in an individual capacity, it is that Name's characteristics, both as to citizenship and jurisdictional amount, that are determinative for jurisdictional purposes. And *the fact that other Lloyd's underwriters who are not diverse parties in the suit may be bound by the result of the suit (whether by contract or by preclusion) is of no consequence.*

*E.R. Squibb*, 160 F.3d at 939–40 (emphasis added).

Applying this holding to this case, the Names represented by each of the five named Syndicates must be considered. However, the Names who subscribe to the policies, but are organized into other ("following") syndicates that are not named in this lawsuit, are "of no consequence," though they "may be bound by the result" of this lawsuit. *Id*. Here, the Lloyd's Defendants have averred that each of the five named Syndicates in this case is composed "of a single corporate capital member," or Name, and the amount in controversy as to each Name exceeds $75,000. *See* Ins.' Resp. at 9; Exs. A-E. The Court therefore denies Vulcan's motion for dismissal for failure of the Lloyd's Defendants to meet the amount-in-controversy requirement.[3]

### 3. Syndicate 1886 Shall Submit Proof of Citizenship

The Defendants claim that "the Lead Syndicates are each comprised of a single corporate

---

[3] Vulcan argues in its Reply that this debate is "purely academic" since, it claims, "[a]ll parties agreed, and this Court ordered," that Vulcan would file an amended complaint, and Vulcan intends to do so to substitute "Certain Underwriters at Lloyd's" for the current Lloyd's Defendants. Rep. at 3. Vulcan is certainly entitled to move to amend its Complaint. What the "Court ordered," however, is that "Vulcan shall file an Amended Complaint within ten (10) business days of the stay being lifted." First Stay Order at 2. The stay referred to in that Order was lifted on August 26, 2021 and extended until October 26, 2021; Vulcan still has not filed a motion to amend. Whether language in the First Stay Order may be interpreted as preemptively granting Vulcan leave to amend is a question for another day, if and when Vulcan files such motion.

capital member and not individual Names." Resp. at 9. More specifically, Defendants have averred that Syndicate 2003 is composed of a single Name, XL Catlin, which is "incorporated under the laws of the United Kingdom, with its principal place of business in the United Kingdom." Ans. of Everest Ind. Ins. Co., *et al.,* Dkt. No. 42, at ¶ 2.3. Syndicate 1686 is also composed of a single Name, Axis Capital Holdings, Ltd., which Defendants aver is also "incorporated under the laws of the United Kingdom, with its principal place of business in the United Kingdom." *Id.*, ¶ 2.9. Syndicate 1414 is composed of a single Name, Ascot Syndicate, which is "incorporated under the laws of the United Kingdom, with its principal place of business in the United Kingdom." *Id*. ¶ 2.13. Syndicate 0382 is composed of a single Name, Hardy, which Defendants aver "is incorporated under the laws of the United Kingdom, with its principal place of business in the United Kingdom." Ans. of Lloyd's of London Syndicate 0382, *et al.,* Dkt. No. 45, at ¶ 2.3

The fifth Lloyd's Defendant, Syndicate 1886, however, has not yet filed an answer, nor, to the Court's knowledge, has it alleged anywhere else its citizenship for purposes of this Court's jurisdiction over this case. Therefore, the Court hereby orders Syndicate 1886 to do so, either in a responsive pleading, or in an evidentiary submission in the form of declarations and/or exhibits, demonstrating the location of its incorporation and principal place of business, or otherwise of its citizenship, no later than 10 days from the date of this Order. Failure to do so may prompt this Court to re-examine the question of its jurisdiction over this matter.

### IV.   CONCLUSION

For the foregoing reasons, Vulcan's Motion to Strike is hereby DENIED. Defendant Syndicate 1886 shall submit to the Court's satisfaction a filing evidencing its citizenship, no later

than May 9, 2022.

DATED this 29th day of April, 2022.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge